354 So.2d 1389 (1978)
MINI-TOGS, INC., et al., Plaintiff-Appellants,
v.
Fred E. YOUNG, Defendant-Appellee.
No. 13455.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1978.
Rehearing Denied March 1, 1978.
Jerry A. Kirby, Monroe, for plaintiffs-appellants.
Robert P. McLeod, Monroe, for defendant-appellee.
Before HALL, MARVIN and JONES, JJ.
En Banc. Rehearing Denied March 1, 1978.
JONES, Judge.
Plaintiffs' petition seeking $6,000,000 in damages because of an alleged "abuse of process" was dismissed on an exception of no cause of action. Plaintiffs seek relief on the theory that defendants have abused legal process, a cause of action recognized at common law, but seldom referred to in our jurisprudence. We recognize that the cause exists in Louisiana, but affirm because of the deficiencies in plaintiffs' allegations.
The City of Monroe has produced and sold electricity to the citizens of the city for many years. The City believed it was to the advantage of the citizens for it to convey the operation of the municipal power system to Louisiana Power and Light Company.
The International Brotherhood of Electrical Workers, Local Union No. 446, had in the past a contract with the city under which the city used approximately 30 members of the local union in the operation of the city electrical system. Louisiana Power and Light is non-union.
The defendant in this suit is the owner of revenue bonds issued by the City who had earlier sued the city on his behalf and on behalf of the class of all bondholders, seeking judgment prohibiting the city from transferring the utility system to LP&L on the grounds the transfer would cause the bonds to be insecure.
The plaintiffs here, as users of city electricity, and for all members of the class of users, filed this damage suit alleging that the defendant's earlier suit against the city had the effect of delaying the transfer of the utilities system to LP&L that this delay would cause the plaintiffs to spend large sums of money for electricity that they otherwise would not be required to spend because the cost of electricity to them would be substantially less if they purchased it from LP&L than if they purchased it from the City.
*1390 The plaintiffs allege that the defendant did not file the suit for the purpose of protecting his bonds, but instead filed the suit for the purpose of delaying the transaction and thereby causing utility customers to bring pressure to bear upon the City to secure or protect the jobs of 30 union electricians employed by the City in the operation of its electrical system. The plaintiffs contend that, because of the defendant's ulterior motive in seeking to accomplish protection for the jobs of union members rather than protection for his City of Monroe bonds, the defendant has committed the tort of abuse of process by the institution of the earlier suit.
The petition contains no allegation of irregularity of process in the earlier suit, nor any allegation that the defendant's legal proceedings within themselves contain any defect. William A. Prosser, Law of Torts, Hornbook Series, at page 877 sets forth the essential elements of abuse of process as follows:
The essential elements of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. (Emphasis added)
In 1 Am.Jur.2d Abuse of Process we find the following explanation with regard to the elements and requirements of abuse of process:
§ 4.
. . . While the existence of an ulterior motive may, perhaps, be inferred from the fact that the process has been misused or misapplied, the reverse is not true, for if the act of the prosecutor is in itself regular, the motive, ulterior or otherwise, is immaterial.
An ulterior motive or a bad intention in using the process is not alone sufficient, the bad intent must have culminated in the abuse, for it is the latter which is the gist of the action. An action for abuse of process cannot be maintained where the process was employed to perform no other function than that intended by law. Thus the mere issuance of process is not actionable as an abuse of process; there must be use of the process, and that use must of itself be without the scope of the process, and hence improper. . . . (Emphasis added)
* * * * * *
§ 12.
But there must be some "abuse" of the writ or process issued, or intent to accomplish a result not lawfully or properly attainable. Even if the moving party had an ulterior purpose in making use of the writ, if there was no "abuse" there is no cause of action.
* * * * * *
§ 13.
. . . If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, even if the plaintiff had an ulterior motive in bringing the action. . . .
In 72 C.J.S. Process § 120, at page 1192, essential elements of abuse of process are explained as follows:
A legal and legitimate use of process, to effect the result which such process is designed by law to accomplish, is not an abuse thereof. Regular use of process cannot constitute abuse, even though the user was actuated by a wrongful motive, purpose, or intent, or by malice.
In Italian Star Line v. United States Board E. F. Corp., 2 Cir., 53 F.2d 359, 361, the plaintiff's abuse of process action was based upon ulterior motives, and was denied because there was no irregularity in the process. The court stated:
. . . Cooley asserts that two elements must exist: First, an ulterior purpose; and, second, "an act in the use of the process not proper in the regular prosecution of the proceeding." . . .
We shall assume that the evidence would justify the jury in finding an ulterior purpose on the part of Goff and Conrad in instigating the receivership proceeding in the name of the United States, namely, the purpose to get access to the records of the company and its president, for use in *1391 the contemplated criminal prosecution. We may also assume, without decision, that the acts and motives of Goff and Conrad should be imputed to the Emergency Fleet Corporation. But an improper motive alone is not enough to make the institution of the receivership proceeding an abuse of process. Whatever the motive, the obtaining of the appointment of the receiver was entirely regular. The plaintiff was indebted to the United States, and its attorney consented to the proceeding. The validity of his consent has been adjudicated in that proceeding and cannot be collaterally attacked. To make out its case, the plaintiff must prove irregular steps taken under cover of the process after its issuance, and damage to the plaintiff resulting therefrom. (Emphasis added)
Under this cause of action plaintiffs must allege irregularity in the process itself, and plaintiffs have failed to do so. The object of the defendant's earlier suit was to stop the transfer. There is nothing illegal about this object. Plaintiffs admit that the defendant's legal attempt to reach this result within itself does not constitute the tort. Plaintiffs claim the tort arises because the defendants were motivated to take care of the jobs of 30 union members. The fact defendant's motives differ from the object of their suit alone does not constitute abuse of process. An irregularity in the earlier proceedings must also be shown.
Abuse of process is recognized in Gonsouland v. Rosomano, 176 F. 481 (C.A. 5th Cir., 1910). The defendant in a suit for rent had seized property not subject to the lessor's lien, and had made seizures of items on the leased premises which were legally exempt. This represents a true abuse of process. The court correctly recognized that common law abuse of process was a cause of action which could be asserted under C.C. Art. 2315.
In Succession of Cutrer v. Curtis, 341 So.2d 1209 (La.App. 1st Cir., 1976), the court listed the essential elements of a cause of action for abuse of process as follows:
. . . (1) the existence of an ulterior purpose; (2) a wilful act in the use of the process not proper in the regular prosecution of the proceeding. (Citations omitted)
While the plaintiffs here have abundantly alleged the first element of ulterior motive, they have failed to allege the second element of irregularity in the proceedings. As was said in the decision of Edmonds v. Delta Democrat Publishing Co., 230 Miss. 583, 93 So.2d 171 (1957), what the plaintiff complains of is "not based on any perversion of any process but simply the filing of the suit."
We agree the plaintiffs have alleged no cause of action and at appellants' cost judgment is
AFFIRMED.