768 So.2d 287 (2000)
WAGUESPACK, SEAGO AND CARMICHAEL (A PLC), John E. Seago and Peter G. Carmichael
v.
Hillary P. LINCOLN.[1]
No. 99 CA 2016.
Court of Appeal of Louisiana, First Circuit.
September 22, 2000.
*289 Peter G. Carmichael, John E. Seago, Baton Rouge, for Plaintiffs-Appellants Waguespack, Seago and Carmichael (A PLC), John E. Seago and Peter G. Carmichael.
John T. Balhoff, Keith A. Kornmon, James M. Garner, New Orleans, for Defendants-Appellees Hillary P. Lincoln; Magnolia Imaging Consultants, A Louisiana Partnership; Robert E. Songy, M.D.; Ranjit S. Kadan, M.D.; Benjamin A. Guider, Jr., M.D.; Gayden Derickson; Edward J. Cambre, Jr.; Clarence B. Brewster, III; Harry P. Gamble, IV; Alan C. Arnold; William W. Watson, Jr.; and Mark A. Tessier.
Philip R. Bulliard, Metairie, in Proper Person.
Before: GONZALES and PETTIGREW, JJ., and CRIGLER,[2] J. Pro Tem.
PETTIGREW, J.
The instant litigation consists of thirteen consolidated suits filed in East Baton Rouge Parish in response to earlier allegations made by defendants against plaintiff law firm and several of its partners. Initially, defendants filed a lawsuit in Jefferson Parish that has since been removed to and remains pending in federal court. Allegations made therein prompted the instant litigation by plaintiffs who allege slander, libel, abuse of process, and negligence. For the following reasons, we affirm in part; reverse in part; amend and remand to the trial court.

FACTS
The initial litigation, now pending in federal court, was originally filed in Jefferson Parish by limited partners in a real estate partnership. The limited partners filed suit against their general partners, several limited partners, and others, alleging breaches of fiduciary duty, conversion of partnership assets, fraudulent misrepresentations, unfair trade practices, and other claims. Said lawsuit was subsequently amended, and later, pursuant to a third amending petition, the law firm and attorneys that had represented the real estate partnership were named as additional defendants. The third amending petition further asserted claims under the RICO statute against all defendants. After the filing of said third amending petition, the lawsuit was removed to federal court (the "federal court litigation").[3]
The attorneys named as defendants in the federal court litigation responded by instituting the instant litigation in East Baton Rouge Parish on behalf of themselves and their law firm against the aforementioned limited partners. This litigation was actually thirteen nearly identical lawsuits asserting that the RICO allegations in the federal court litigation constituted defamation, libel, malicious prosecution, abuse of process, and/or negligence.[4] These suits were ultimately consolidated and form the basis of the instant appeal.
ACTION OF THE TRIAL COURT
After the institution of the instant litigation, defendants responded by filing dilatory exceptions raising the objections of *290 prematurity and vagueness; a declinatory exception raising the objection of improper venue; and a peremptory exception raising the objection of no cause of action. Following a hearing, the trial court sustained defendants' objection of prematurity and dismissed plaintiffs' claims against defendants without prejudice on June 26, 1998. Based upon this ruling, the trial court deferred ruling on defendants' remaining exceptions. The trial court subsequently denied plaintiffs' motion for a new trial.
On September 8, 1998, the trial court granted plaintiffs' motion for devolutive appeal. Subsequently, on October 9, 1998, plaintiffs filed an ex parte motion to limit appeal, which the trial court granted without a hearing. Defendants later answered the appeal to alternatively plead their remaining exceptions and put forth a demand for sanctions, attorney fees, and legal costs incurred in opposing a frivolous appeal.

ISSUES PRESENTED ON APPEAL
The sole issue presented by plaintiffs is whether the actions for abuse of process and negligence are separate and independent claims that are distinct from defamation and malicious prosecution, and as such are actionable even where the process originates in litigation that has not been resolved.

DISCUSSION
At the outset of their brief to this court, plaintiffs readily concede that their asserted claims of defamation and malicious prosecution were premature and not actionable until the resolution of the federal court litigation in which the allegedly harmful statements were made. Accordingly, the trial court's judgment is affirmed as to these issues.
However, plaintiffs also claim defendants committed abuse of process and/or negligence in failing to properly investigate the allegations set forth in their third amending petition. To support their claim, plaintiffs cite La.Code Civ. P. art. 863 B, which provides that the signature of an attorney or party on a pleading constitutes a certification that said pleading "is well grounded in fact ... and that it is not interposed for any improper purpose." Plaintiffs argue that unlike their claims of defamation and malicious prosecution, the claims for abuse of process and/or negligence do not depend upon the termination of the litigation in which the allegations were made. Plaintiffs assert that this court should permit them to pursue these claims through discovery and determine what prior investigation defendants conducted before making "scurrilous allegations of criminal conduct."
In response, defendants take the position that plaintiffs' claims regarding abuse of process and/or negligence are premature for the same reason that plaintiffs' other causes of action are premature. Defendants contend that plaintiffs have alleged a defamation cause of action "under the disguise of abuse of process and negligence claims." Defendants further contend that plaintiffs'"abuse of process and negligence claims are merely a backdoor attempt to state a defamation cause of action."
In their briefs to this court, both parties cite and rely on Succession of Cutrer v. Curtis, 341 So.2d 1209 (La.App. 1 Cir. 1976), writ denied, 343 So.2d 201 (La. 1977), as a correct statement of the law regarding abuse of process. This court, in its opinion in Cutrer, examined whether the common law tort of abuse of process was actionable under Louisiana law. In resolving this issue, the court looked to Gonsouland v. Rosomano, 176 F. 481 (U.S. CCA 5th Cir.1910), which recognized that common law abuse of process was a cause of action that could be asserted in Louisiana under La. Civ.Code art. 2315. The court in Cutrer then proceeded to set forth the essential elements of an abuse of process claim: (1) the existence of an ulterior *291 purpose; and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding. Cutrer, 341 So.2d at 1213-14. Ultimately, in Cutrer, the court concluded that under the facts presented, the plaintiff had failed to state a cause of action for abuse of process.
Actions for abuse of process have since been recognized in other circuits as well. In Mini-Togs, Inc. v. Young, 354 So.2d 1389 (La.App. 2 Cir.1978), the second circuit cited various common law authorities, most notably, William A. Prosser, Law of Torts, Hornbook Series; American Jurisprudence 2d; and Corpus Juris Secundum. These authorities all expressed views similar to those set forth in Corpus Juris Secundum, namely that:
A legal and legitimate use of process, to effect the result which such process is designed by law to accomplish, is not an abuse thereof. Regular use of process cannot constitute abuse, even though the user was actuated by a wrongful motive, purpose, or intent, or by malice.

Mini-Togs, Inc., 354 So.2d at 1390 (quoting 72 C.J.S. Process § 120)(emphasis supplied).
In Mini-Togs, Inc., the second circuit further held that "[u]nder this cause of action, plaintiffs must allege irregularity in the process itself, and plaintiffs have failed to do so." Mini-Togs, Inc., 354 So.2d at 1391. While noting that plaintiffs had abundantly alleged the first element of ulterior motive, the court pointed out that plaintiffs had failed to allege the second element of irregularity in the proceedings. Accordingly, in Mini-Togs, Inc., the second circuit concluded that plaintiffs had failed to allege a cause of action for abuse of process. A similar result was later reached in W.E. Weldon v. Republic Bank, 414 So.2d 1361 (La.App. 2 Cir.1982).
In Goldstein v. Serio, 496 So.2d 412 (La.App. 4 Cir.1986), writs denied, 501 So.2d 208, 209 (La.1987), the fourth circuit examined whether the defense of absolute privilege could be asserted to defeat actions for malicious prosecution and abuse of process. With regard to abuse of process, the fourth circuit stated:
Abuse of process involves the misuse of a process already legally issued whereby a party attempts to obtain a result not proper under the law. At issue in such actions is the intent to use a legal process for an improper reason, not the statements made. In both malicious prosecution and abuse of process, the crux of the action is not the statements made but the fact that a proceeding was maliciously and/or illegally pursued.
Goldstein, 496 So.2d at 415 (citations omitted).
In Goldstein, the fourth circuit ultimately reversed the trial court's finding of no cause of action and held that actions for malicious prosecution and abuse of process cannot be defeated by the defense of absolute privilege. In Umerska v. Katz, 477 So.2d 1252 (La.App. 4 Cir.1985), the court reversed the lower court's judgment for plaintiff and concluded that the defendant's previously dismissed eviction suits against plaintiff were warranted and could not be considered irregularities in the process. Umerska, 477 So.2d at 1256.
In Stark v. Eunice Superette, Inc., 457 So.2d 291 (La.App. 3 Cir.), writ denied, 461 So.2d 316 (La.1984), the third circuit affirmed the trial court and concluded that plaintiff had failed to establish abuse of process on the part of defendant store owner or its employees. The court held that plaintiff failed to prove (1) that the employees of defendant store had an ulterior motive in providing information to police, and (2) that once criminal process had been instituted, said process had been misused in an attempt to attain some improper end. Stark, 457 So.2d at 295.
Upon application of the foregoing precepts to the facts presented in the instant case, we conclude that unlike plaintiffs' claims of defamation and malicious prosecution, a claim for abuse of process may be asserted prior to the termination of the litigation in which the allegations were *292 made. Accordingly, the trial court erred in dismissing plaintiffs' claim based upon a dilatory exception raising the objection of prematurity. For this reason, we decline to address defendants' claim for sanctions, attorney fees, and costs set forth in their answer to this appeal.
Nevertheless, we note that upon maintaining defendants' dilatory exception based upon prematurity, the trial court did not address the remaining exceptions raised by defendants, most notably, the peremptory exception raising the objection of no cause of action. As we have previously indicated, defendants have answered plaintiffs' appeal and alternatively plead their remaining exceptions.
Based upon our review of the applicable jurisprudence and the record in this matter, we conclude that plaintiffs have failed to establish the essential elements of an abuse of process claim. Even if this court was to assume arguendo that the allegations set forth by defendants against plaintiffs stemmed from an ulterior purpose, plaintiffs have failed to establish the second element of irregularity in the proceedings. While plaintiffs allege that defendants filed their third amending petition without the due diligence required by Article 863 B, the plaintiffs have not alleged any facts that substantiate the irregularity of the process itself. Nor have plaintiffs alleged that the process was illegally issued, or that the defendants attempted to obtain a result not proper under the law.
As we previously noted from the second circuit's opinion in Mini-Togs, Inc., "[r]egular use of process cannot constitute abuse, even though the user was actuated by a wrongful motive, purpose, or intent, or by malice." Mini-Togs, Inc., 354 So.2d at 1390. Absent a showing of abuse through an illegal, improper or irregular use of process, plaintiffs have failed to state a cause of action.
The third amending petition filed by defendants was certified as required by Article 863 B and was served upon plaintiffs as required by law. There is nothing irregular in the procedure used by the defendants. However, if defendants did not properly investigate as required by Article 863 B, they may be subject to sanctions as provided for in Article 863 D:
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.
Pursuant to subsection D of Article 863, sanctions may be awarded by motions, not by petitions. A violation of La. Code Civ. P. art. 863 does not, in and of itself, give rise to a separate cause of action for damages under La. Civ.Code art. 2315. The appropriate remedy would be a motion for sanctions in the pending proceeding in which the violation occurred, as provided for in Article 863 D. A violation of Article 863 may be one of many elements in a separate cause of action under Article 2315. Unless there is a separate legal basis, a claim for sanctions may not be raised as a counterclaim, but may only be raised by motion. Gattis v. Thomson, 602 So.2d 300, 301 (La.App. 3 Cir. 1992).
In light of the foregoing, if plaintiffs, through amendment of their petition, can establish that defendants' third amending petition was improperly served upon a nonparty to this lawsuit, or other similar scenario, then said facts, if proven, may constitute an irregularity in the process or an attempt by the defendants to obtain a result not proper under the law. These circumstances, if present, could also be the basis for an abuse of process lawsuit. Plaintiffs should be allowed a reasonable *293 period of time to amend their pleadings accordingly.
We turn now to plaintiffs' claim that defendants were negligent in failing to properly investigate the allegations set forth in their third amending petition. In both their original and reply briefs to this court, plaintiffs fail to cite any authority for their argument that defendants may be held liable in negligence based upon allegations asserted by them in the federal court litigation. While we agree that plaintiffs' claim for abuse of process is a separate and distinct claim that may be asserted prior to the resolution of the federal court litigation, we cannot say the same for plaintiffs' claim of negligence. The negligence cause of action asserted in plaintiffs' main demand could not arise prior to the final determination of the third amending petition in the federal court litigation. Therefore, the claim asserted by plaintiffs does not yet exist and is premature. Until such time as these allegations are determined to be false, said claim is premature.

CONCLUSION
For the reasons set forth above, the judgment of the trial court sustaining defendants' objections of prematurity is affirmed with respect to plaintiffs' claims of defamation, malicious prosecution, and negligence. The trial court's judgment is reversed to the extent that it dismissed plaintiffs' claim of abuse of process based upon defendants' objection of prematurity. We hereby amend said judgment and sustain defendants' peremptory exception raising the objection of no cause of action as to plaintiffs' claim of abuse of process. We remand this matter to the trial court with instructions to allow plaintiffs sufficient time in which to amend their suit so as to allege a cause of action for abuse of process. See La.Code Civ. P. art. 932. Defendants' demand for sanctions, attorney fees, and costs is hereby dismissed. All costs incurred in connection with this appeal shall be borne equally by the parties.
AFFIRMED IN PART; REVERSED IN PART; AMENDED AND REMANDED.
NOTES
[1] In the trial court, twelve related cases were subsequently transferred and consolidated with the instant matter. These cases are as follows:

Waguespack, Seago & Carmichael (A PLC), et al. v. Magnolia Imaging Consultants, a Louisiana Partnership, No. 446-292;
Waguespack, Seago & Carmichael (A PLC), et al. v. Robert E. Songy, M.D., No. 446-293;
Waguespack, Seago & Carmichael (A PLC), et al. v. Ranjit S. Kadan, No. 446-294;
Waguespack, Seago & Carmichael (A PLC), et al. v. Benjamin A. Guider, Jr., M.D., No. 446-295;
Waguespack, Seago & Carmichael (A PLC), et al. v. Gayden Derickson, No. 446-296;
Waguespack, Seago & Carmichael (A PLC), et al. v. Edward J. Cambre, Jr., No. 446-297;
Waguespack, Seago & Carmichael (A PLC), et al. v. Philip R. Bulliard, et al., No. 446-298;
Waguespack, Seago & Carmichael (A PLC), et al. v. Clarence B. Brewster, III, No. 446-299;
Waguespack, Seago & Carmichael (A PLC), et al. v. Harry P. Gamble, IV, No. 446-300;
Waguespack, Seago & Carmichael (A PLC), et al. v. Alan C. Arnold, No. 446-301;
Waguespack, Seago & Carmichael (A PLC), et al. v. William W. Watson, Jr., No. 446-302;
Waguespack, Seago & Carmichael (A PLC), et al. v. Mark A. Tessier, No. 446-303.
[2] Judge John D. Crigler is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[3] In their briefs to this court, the parties refer to this initial lawsuit as the "Partner Suit."
[4] In their briefs to this court, the parties refer to the instant consolidated lawsuits as the "Abuse Suits."