ATTORNEY DISCIPLINARY
 

 WEIMER, J.
 

 | ]This disciplinary matter arises from formal charges filed by the Office of Disci
 
 *528
 
 plinary Counsel (ODC) against attorney Roy A. Raspanti (Respondent). The charges alleged, in part, that he filed a defamation suit against a former client based on a complaint she filed with the ODC. The ODC asserted Respondent’s actions violated Section 12 of Louisiana Supreme Court Rule XIX (Rule XIX), which provides, in part, that communications to the disciplinary board, the hearing committee, and the ODC “shall be absolutely privileged” and that “no lawsuit predicated thereon may be instituted against any complainant or witness.”
 

 Both the hearing committee and the disciplinary board found Respondent’s conduct violated Rules 3.1, 8.4(a), and 8.4(d) of the Rules of Professional Conduct. Furthermore, the hearing committee determined Respondent violated the “spirit” of Rule XIX, § 12(A), and the disciplinary board found his conduct was in “direct violation” of that provision.
 

 Because this court has never specifically addressed the effect of Section 12(A), we docketed the matter on our own motion in order to address the legal issue raised 12herein; whether an attorney’s violation of Rule XIX, § 12(A) can be the basis for discipline and the imposition of sanctions.
 
 [1]
 

 FACTS
 

 The following facts are undisputed and supported by the record. Thus, if we agree with the committee’s and the board’s resolution of the legal issue, the ODC will have met its burden of proof by clear and convincing evidence.
 

 Over the years, Respondent has represented his sister, Janine Raspanti, in various civil matters, at the urging of his parents. In 1994, Ms. Raspanti filed the first of several disciplinary complaints against Respondent with the ODC; she alleged that Respondent had engaged in unethical conduct in representing her in two civil suits for damages. For the most part, her complaints stemmed from disputes between herself and Respondent concerning the payment of legal fees. In each instance, the ODC found no clear and convincing evidence of ethical misconduct by Respondent and dismissed the complaint. As is the right of every complainant under the provisions of Rule XIX, Ms. Raspanti appealed the dismissal of each of her complaints to a hearing committee, to the disciplinary board, and to this court. Again, in each instance, the ODC’s decision to dismiss the complaint against Respondent was affirmed.
 

 Ms. Raspanti’s second complaint was filed in 1997. According to Respondent, Ms. Raspanti alleged he had engaged in a “dishonest, fraudulent and deceitful misrepresentation” and that he engaged in document concealment, was “exploitive” |,^and breached “his ethics.” The ODC determined that Ms. Raspanti’s “new” complaint was meritless, did not require a response from Respondent, and warranted dismissal without further investigation. Unfortunately, due to an oversight, the ODC did not notify Respondent of the 1997 complaint. Respondent avers he would not have undertaken a subsequent
 
 *529
 
 representation of his sister in 1999 had he known of her second complaint in 1997. During the years, Respondent obtained judgments in favor of his sister, but the disputes over fees continued.
 

 Ms. Raspanti filed her third complaint with the ODC in December of 2001. In March and April of 2002, she made five communications to the ODC, in which she restated her continuing dissatisfaction with Respondent. Again, the ODC responded by dismissing her complaints.
 

 In January 2003, Respondent filed a lawsuit against Ms. Raspanti for breach of contract and defamation. The third cause of action contained in Respondent’s petition specifically asserted defamation by Ms. Raspanti because of the complaints she had filed against him with the ODC. In response to the petition, Ms. Raspanti asserted the defense of immunity pursuant to Rule XIX, § 12(A). Respondent opposed the exception, arguing that, at a minimum, Ms. Raspanti was not immune from liability for defamatory statements she made in her complainant appeals filed in this court, a body which is not specifically listed in Rule XIX, § 12(A).
 
 [2]
 

 Following a mediation effort in early 2004, the attorney for Ms. Raspanti’s insurer sent a letter to the other parties and their counsel stating, in part:
 

 Both parties agree to execute a Release Agreement which will prevent them from ever bringing any further disciplinary complaints or lawsuits |4arising out of or in any way connected with Roy’s representation of Janine over the past ten years. Roy will receive payment of $3,000.00. Janine will agree that if she ‘defames Roy in the future, and he successfully prosecutes to final judgment a claim for that defamation, Janine will pay him, in addition to the actual damage award, a penalty of $15,000 plus reasonable attorney’s fees.
 

 Thereafter, Respondent forwarded to Ms. Raspanti’s attorneys a two-page settlement proposal which contained the essence of the above statement. Respondent also proposed that: “In the event that Roy Raspanti ever obtains a final collectible judgment against Janine M. Raspanti for libel, slander, or defamation, for any incidents occurring after the date of this agreement, Janine M. Raspanti agrees to pay Roy Raspanti, in addition to the actual damage award, an additional penalty of $15,000 plus reasonable attorney’s fees and costs.” Ms. Raspanti did not agree to Respondent’s settlement proposal, and Respondent’s lawsuit against her remains pending at this time.
 

 DISCIPLINARY PROCEEDINGS
 

 On December 19, 2006, the ODC filed one count of formal charges against Respondent, alleging that his conduct as set forth above violated Rule XIX, § 12(A) as well as the following provisions of the Rules of Professional Conduct: Rules 8.4(a) (violation of the Rules of Professional Conduct) and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
 
 [3]
 
 Respondent answered the formal charges and denied any misconduct.
 

 
 *530
 

 \ ¡formal Hearing:
 

 This matter proceeded to a formal hearing on May 15, 2007. Respondent appeared at the hearing and was represented by counsel. The committee received documentary evidence from both Respondent and the ODC. The ODC called attorney Thomas Buck to testify in person before the hearing committee. Mr. Buck represented Janine Raspanti and her homeowner’s insurer in connection with the defamation and breach of contract lawsuit filed against her by Respondent.
 

 Respondent testified on his own behalf and on cross-examination by the ODC. In his testimony, Respondent stated that he agreed to represent Ms. Raspanti at the urging of their parents. According to Respondent, Ms. Raspanti filed disciplinary complaints against him whenever she did not want to pay him his fee. He filed a lawsuit against her because he believed he had a cause of action for defamation. However, he amended the lawsuit to remove the defamation cause of action based on Ms. Raspanti’s disciplinary complaints and her complainant appeals to the ODC, hearing committees, and disciplinary board, but kept the defamation cause of action based upon her complainant appeals to this court. He also added the causes of action of abuse of process and malicious prosecution based on
 
 Goldstein v. Serio,
 
 496 So.2d 412 (La.App. 4 Cir.1986),
 
 writs denied,
 
 501 So.2d 208, 209 (La.1987), and
 
 Sommer v. State, Department of Transportation and Development,
 
 97-1929 (La. App. 4 Cir. 8/29/00), 758 So.2d 923,
 
 writ denied,
 
 00-1759 (10/27/00), 772 So.2d 122. Respondent also stated that he sent the proposed settlement agreement to Mr. Buck in response to Mr. Buck’s February 12, 2004 letter, which summarized Mr. Buck’s view of the settlement reached during the mediation. He testified that he did not think any of the provisions were going to be enforceable, but the judge and the | (¡mediator were strongly urging the parties to come to some sort of agreement. Therefore, he responded in good faith with his proposed settlement agreement.
 

 Hearing Committee Report:
 

 After considering the evidence and testimony presented at the hearing, the committee made the following findings.
 

 Respondent filed a lawsuit against Ms. Raspanti that alleged a claim for defamation based upon various disciplinary complaints Ms. Raspanti had filed with the ODC and appeals to the hearing committee and disciplinary board, which claim is precluded by Rule XIX, § 12(A) and, therefore, is a non-meritorious action. Mr. Buck wrote to Respondent’s attorney, raising the issue of Rule XIX, § 12(A) and requesting a dismissal of the defamation claim. Respondent amended the lawsuit but did not remove the defamation claim entirely. The third cause of action listed communications to the ODC and there was no clear delineation that the cause of action was based only on defamation in the Fifth Circuit Court of Appeals, United States District Court, and the Louisiana Supreme Court. On December 9, 2003, the trial court dismissed the defamation claim. Respondent’s reliance on
 
 Goldstein
 
 is misplaced because the court of appeal based its decision on the Louisiana State Bar Association’s Articles of Incorporation, Article XV, § 13 (repealed), which does not appear to specifically provide an absolute preclusion of suit based upon communications to the disciplinary board as is
 
 *531
 
 contained in Rule XIX, § 12(A). Respondent’s reliance on
 
 Sommer
 
 is also misplaced because
 
 Sommer
 
 does not interpret Rule XIX, § 12(A). Respondent wrote to Mr. Buck on March 9, 2004, and proposed a settlement agreement that included monetary penalties against Ms. Raspanti if she filed future disciplinary complaints against him. If executed, the |7agreement would have had a “chilling effect” on the filing of such complaints in the future.
 

 Based on these findings, the committee determined that Respondent violated the spirit of Rule XIX, § 12(A) and also violated Rules 3.1, 8.4(a), and 8.4(d) of the Rules of Professional Conduct. The committee also determined that Ms. Raspanti suffered no direct harm. The only aggravating factor found by the committee was Respondent’s refusal to acknowledge the wrongful nature of the conduct.
 

 The committee further found that Ms. Raspanti filed at least two non-meritorious complaints against Respondent, and Respondent only represented her at the insistence of their parents. The committee indicated it appreciated Respondent’s frustration with his sister and expressed sympathy with his plight, but stated that “we have no choice but to recognize the violation and recommend a sanction.” Accordingly, the committee recommended that Respondent be publicly reprimanded.
 

 Neither Respondent nor the ODC filed an objection to the hearing committee’s recommendation.
 

 Disciplinary Board Recommendation:
 

 After review, the disciplinary board determined that the hearing committee’s factual findings are not manifestly erroneous. The board found Respondent’s conduct violated Rules 3.1, 8.4(a), and 8.4(d) of the Rules of Professional Conduct. Furthermore, the board determined Respondent engaged in conduct that was in direct violation of Rule XIX, § 12(A).
 

 Regarding Respondent’s reliance on
 
 Goldstein,
 
 the board noted that the
 
 Gold-stein
 
 decision was rendered prior to the promulgation of Rule XIX, § 12(A), which became effective April 1, 1990. Regarding Respondent’s reliance on
 
 Sommer,
 
 |sthe board agreed with the committee that
 
 Sommer
 
 does not address Rule XIX, § 12(A).
 

 The board determined that Respondent knowingly violated duties owed to the legal system and to Ms. Raspanti. He caused harm to Ms. Raspanti in that she was forced to defend the defamation claims. Furthermore, Respondent’s retaliatory action threatens to undermine the disciplinary system. Relying on the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the board determined that the baseline sanction is suspension.
 

 In aggravation, the board found the following factors: refusal to acknowledge the wrongful nature of the conduct, lack of remorse, substantial experience in the practice of law (since 1975), and indifference to making restitution or minimizing the harmful effects of the misconduct. The only mitigating factor found by the board is the absence of a prior disciplinary record.
 

 Considering the above, the board recommended that Respondent be suspended for one year with all but three months deferred. The board further recommended that Respondent be placed on unsupervised probation for nine months following the active period of the suspension, subject to the condition that any misconduct during this period may be grounds for making the deferred suspension executory or imposing additional discipline, as appropriate. Finally, the board recommended that Respondent be assessed with all costs and expenses of these proceedings.
 

 
 *532
 
 DISCUSSION
 

 The United States Supreme court has characterized attorney disciplinary proceedings as quasi-criminal in nature.
 
 In re Ruffalo,
 
 390 U.S. 544, 551, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968). Rule XIX, § 18(A), states that “[disciplinary proceedings are neither civil nor criminal but are sui generis.”
 

 |
 
 ¡).Louisiana Supreme Court Rule XIX, § 12(A):
 

 The core legal issue in this matter relates to the interpretation and effect of Rule XIX, § 12. Rule XIX is entitled “Rules for Lawyer Disciplinary Enforcement;” Section 12 is entitled “Immunity” and provides immunity from civil suits and criminal prosecutions. Specifically, this court is called upon to decide whether a violation of Rule XIX, § 12(A) can be the basis for discipline and the imposition of sanctions.
 

 Rule XIX, § 9(a) states that it shall be ground for discipline for a lawyer to “violate or attempt to violate the Rules of Professional Conduct, or any other rules of this jurisdiction regarding professional conduct of lawyers.” Clearly, Rule XIX, § 12(A) is not a provision of the Rules of Professional Conduct.
 
 See
 
 Louisiana State Bar Association (LSBA) Articles of Incorporation, Art. XVI, Rules of Professional Conduct, Rule 1.0,
 
 et seq.
 
 Thus, the sole question presented is whether Rule XIX, § 12(A) is one of the “other rules of this jurisdiction regarding professional conduct of lawyers.”
 

 It will be helpful to consider these provisions in their historical perspective.
 

 In the late 1980s, the Louisiana Supreme Court recognized that the state bar was experiencing an “ethics crisis.” Address by Chief Justice John A. Dixon, Press Conference (Feb. 6, 1990), cited in
 
 The New Louisiana Disciplinary Enforcement Rules v. The Old Rules: A Comparison,
 
 36 Loy. L.Rev. 433 (1990). With a significant increase in this state’s lawyer population, the number and complexity of complaints had increased, overburdening the then existing disciplinary system. This court requested that the American Bar Association (ABA) Standing Committee on Professional Discipline evaluate Louisiana’s disciplinary enforcement procedures.
 
 Id.
 
 at 438. An ABA team came to Louisiana and conducted the evaluation, and | thereafter issued a report, “Professional Discipline for Lawyers and Judges,” on the areas of Louisiana’s system that the team concluded were in need of revision.
 
 [4]
 
 After the submission of the report in July of 1987, this court appointed a committee to review the ABA’s findings.
 
 Id.
 

 However, in 1989, while the local review was pending, the ABA adopted the Model Rules for Lawyer Disciplinary Enforcement. This court responded by discontinuing its own evaluation project and adopting and promulgating the ABA’s new model rules regarding disciplinary enforcement, La. S.Ct. Order (Feb. 6, 1990), making Louisiana the first state to use the new ABA Model Rules for Lawyer Disciplinary Enforcement.
 
 Id.
 
 at 433.
 

 
 *533
 
 In 1990, Article XV, “Discipline and Disbarment of Members,” of the LSBA Articles of Incorporation was vacated and repealed. In its place, Louisiana Supreme Court Rule XIX was reenacted
 
 [5]
 
 to incorporate the “Rules for Lawyer Disciplinary Enforcement.” The “Rules of Professional Conduct” remained and still are in Article XVI of the LSBA Articles of Incorporation.
 
 [6]
 
 However, the reenacted Rule XIX |n changed the disciplinary procedure and the sanctions imposed for professional misconduct.
 
 Id.
 
 at 445. Additionally, there was a change in the provision related to a privilege for complaints to the disciplinary committee of the LSBA.
 

 The previous “Privileges and Immunities” provision, Art. XV, § 13 provided, in pertinent part:
 

 [1] Complaints filed with the Committee in accordance with these rules shall be absolutely privileged
 

 and
 

 [2] all communications and evidence predicated thereon shall not be admissible in any court in this State in proceedings against the person filing such complaints.
 

 The replacement for Art. XV, § 13, Paragraph A of Section 12, of Rule XIX entitled “Immunity,”
 
 [7]
 
 states, in pertinent part:
 

 [1] Communications to the board, hearing committees, or disciplinary counsel relating to lawyer misconduct or disability and testimony given in the proceedings shall be absolutely privileged,
 

 and
 

 [2] no lawsuit predicated thereon may be instituted against any complainant or witness.
 

 Obviously, both provisions create an absolute privilege. However, Art. XV, § 13 implicitly recognized that complainants could be sued, whereas Rule XIX, § 12(A) prohibits such suits.
 

 The key words in both provisions are “absolutely privileged.” A “privilege” as it relates to the law of libel and slander is defined as an “exemption from liability for the speaking or publishing of defamatory words concerning another, based on the fact that the statement was made in the performance of a duty, political, judicial, social, or personal.” Black’s Law DictionaRY, 1360(4th ed.1968). An “absolute | ^privilege” is defined as a “privilege that immunizes an actor from suit, no matter how wrongful the action might be, and even though it is done with an improper motive.” Black’s Law Dictionary, 1215 (7th ed.1999). Louisiana jurisprudence has consistently held that communications made in judicial or quasi-judicial proceedings carry an absolute privilege so that
 
 *534
 
 witnesses, bound by their oaths to tell the truth, may speak freely without fear of civil suits for damages.
 
 Knapper v. Connick,
 
 96-0434, p. 3 (La.10/15/96), 681 So.2d 944, 946,
 
 citing Bienvenu v. Angelle,
 
 254 La. 182, 223 So.2d 140 (1969),
 
 overruled on other grounds, Gonzales v. Xerox Corporation,
 
 254 La. 182, 320 So.2d 163 (1975). This court has recognized the difference between absolute immunity, which defeats a suit at the outset, and qualified immunity, which depends on circumstances and motivations and often must be established by evidence at trial.
 
 Knapper,
 
 96-0434 at 6, 681 So.2d at 948.
 

 The key words in the additional sentence of Rule XIX, § 12(A) — and no lawsuit predicated thereon may be instituted against any complainant or witness— are “instituted” and “no lawsuit.” In the context of this legal rule, the word “instituted” is defined as “to begin or start; commence.” Black’s Law DictionaRY, 801 (7th ed.1999). The words “no lawsuit” clearly foreclose the institution of any lawsuit whatsoever, regardless of the cause or causes of action pled therein. Thus, Respondent’s argument in the instant matter that Rule XIX, § 12(A), as applied by this court, leaves the door open for suits for malicious prosecution and/or abuse of process is untenable. It is absolutely clear that Rule XIX, § 12(A) prohibits all lawsuits predicated on the complaint or the testimony, and, thus, provides additional protection to complainants and witnesses that the former rule did not provide. The policy decision by this court to protect those who file complaints against lawyers from retaliatory lawsuits avoids a chilling effect upon the proper function of the |¡ .¡lawyer regulatory system. This provision is consistent with the overall purpose of Rule XIX to engender confidence by the public in Louisiana’s lawyer regulatory system.
 

 The ABA “Commentary” regarding the portion of Rule 12 “Immunity” at issue in this case states, in pertinent part:
 

 A policy of conferring absolute immunity ... encourages those who have some doubt about a lawyer’s conduct to submit the matter to the proper agency, where it may be examined and determined. Without immunity, some valid complaints will not be filed. The individual lawyer may suffer some hardship as the result of the occasional filing of a malicious complaint, but a profession that wants to retain the power to police its own members must be prepared to make some sacrifice to that cause.
 

 It is unlikely that even a malicious complaint will cause any damage beyond some inconvenience. The members of the agency to whom the complaint is submitted will surely not hold it against the lawyer, for their very function is to separate meritorious from undeserving complaints.
 

 Model Rules for Lawyer Disciplinary Enforcement,
 
 Rule 12: Immunity, Commentary (1993 ed.).
 

 This Rule 12 Commentary explains and confirms the absolute privilege accorded to communications to the board, hearing committees, or disciplinary counsel and the immunity from civil suit accorded to complainants and witnesses.
 
 [8]
 
 However, the
 
 *535
 
 Rule 12 Commentary does not address the issue in this case: whether an attorney is subject to discipline for filing suit against the complainant.
 

 |14As previously stated, our decision is based on whether Section 12(A) can be considered among “other rules of this jurisdiction regarding professional conduct of lawyers” as provided in Rule XIX § 9(a). We find it disingenuous to assert otherwise. Admittedly, Section 12(A) does not mention lawyers. However, the provisions specify an absolute privilege for communications and a prohibition of the filing of civil suits against complainants and witnesses. Thus, the prohibition of Section 12(A) addresses itself to lawyers, who in most cases are the subjects of the privileged communications and who would be the ones to institute suits against complainants or witnesses.
 
 [9]
 
 Thus, we conclude Rule XIX, § 12(A) is a “rule regarding professional conduct of lawyers” and makes lawyers susceptible to discipline for violation of its provisions.
 

 Considering the facts as found by the hearing committee and the conclusions of the board, we agree that Respondent, by filing suit against a complainant for defamation not only violated the spirit of Rule XIX, § 12(A), but was in direct violation of its prohibitions, an action that subjects him to the disciplinary process.
 
 See
 
 Rule XIX, § 9(a).
 

 In his defense to this court, Respondent argues that the Rules for Lawyer Disciplinary Enforcement cannot form the basis of misconduct or discipline. In support of this contention Respondent cites
 
 In re Harris,
 
 03-0212, (La.5/9/03), 847 So.2d 1185. In that case, the ODC filed one count of formal charges alleging that respondent’s behavior in relation to a previous disciplinary proceeding
 
 (Harris
 
 I), had been in violation of a laundry list of rules; he allegedly “engaged in conduct | ^prejudicial to the administration of justice in violation of Rule 8.4(d); and, in bad faith, obstructed the disciplinary process in violation of Rules 8.1(c) and 8.4(g) and Supreme Court Rule XIX, § 12(A).”
 
 Harris,
 
 03-0212 at 5, 847 So.2d at 1188.
 

 In the instant case, Respondent relies on the following language: “[T]he board noted that [Supreme Court Rule XIX, § 12(A)] does not provide a disciplinary remedy. Accordingly, the board declined to find that respondent violated Rule XIX, § 12(A).”
 
 Harris,
 
 03-0212 at 14, 847 So.2d at 1193-1194. Consideration of that statement in the context of the entirety of this court’s opinion reveals that Respondent’s reliance is misplaced. The statement was included in the “Disciplinary Board Recommendation.” Although this court did not specifically repudiate the statement by the board, it is clear from our “Discussion,” that violation of Rule XIX, § 12(A) played a significant part in our decision that permanent disbarment was the proper sanction. We stated:
 

 Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequent
 
 *536
 
 ly, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence....
 

 The record supports a finding of professional misconduct that is unquestionably serious in nature. Respondent manufactured evidence and presented perjured testimony in an attempt to avoid lawyer discipline,
 
 and he threatened his former clients with civil litigation if either of them testified against him in the disciplinary proceeding.
 
 By engaging in these practices, respondent has violated the most fundamental duty of an officer of the court.
 

 Having found evidence of professional misconduct, the sole issue presented for our consideration is the appropriate sanction for respondent’s actions....
 

 Respondent’s conduct clearly violated duties owed to the public, the legal system, and the profession. In our view, respondent’s breach of ethics was profound and directly affected the lawyer disciplinary system and the administration of justice. [Citations omitted; emphasis supplied.]
 

 Harris,
 
 03-0212 at 15-16, 847 So.2d at 1194.
 

 |UiIn the board’s recommendation to this court in the instant case, the board stated:
 

 Respondent’s post-hoc rationalizations ignore the Section 12(A) proscription which provides that “no lawsuit predicated” upon any communications to the board, hearing committee or disciplinary counsel “may be instituted against any complainant or witness.” [Emphasis added.] Respondent’s defamation suit against Ms. Raspanti based upon her complaints to Disciplinary Counsel flies squarely in the face of the Section 12(A) prohibition.
 

 Unlike Respondent, we cannot ignore the plain terms of Section 12(A). We believe the Supreme Court said what it meant and meant what it said in Section 12(A). That provision is essential to the effective functioning of the disciplinary process.
 

 We agree with the board that violation of Rule XIX § 12(A) can subject an attorney to discipline and a finding of professional misconduct, which in turn supports the imposition of sanctions.
 

 Rules of Professional Conduct:
 

 We now consider whether Respondent can be sanctioned for his actions.
 

 Rule 8 of the Rules of Professional Responsibility is entitled “Maintaining Integrity of the Profession,” and its five parts run the gamut of provisions regarding bar admissions and disciplinary matters to a provision outlining the jurisdiction of the disciplinary process.
 

 Rule 8.4 is entitled “Misconduct” and provides a list of various acts that constitute professional misconduct. Rule 8.4’s definition of professional misconduct is a corollary of Rule XIX, § 10(A), which provides that misconduct shall be grounds for one or more of the sanctions listed therein. Rule 8.4 provides, in pertinent part:
 

 It is professional misconduct for a lawyer to:
 

 (a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
 

 [[Image here]]
 

 (d) Engage in conduct that is prejudicial to the administration of justice.
 

 |17We agree with the committee and the board that Respondent’s behavior breached Rule 3.1 of the Rules of Professional Conduct and, thus, constituted professional misconduct pursuant to Rule 8.4(a). Rule 3 of the Rules of Professional
 
 *537
 
 Conduct is entitled “Advocate”
 
 [10]
 
 and sets forth the standards a lawyer must follow when he or she assists, defends, pleads, or prosecutes. Rule 8.1, which is the first of eight parts, is entitled “Meritorious Claims and Contentions”; it provides, in pertinent part:
 

 A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.
 

 The hearing committee and the board concluded that Respondent’s civil suit against his former client, which asserted a claim of defamation arising from her complaints to the ODC, was frivolous in nature and violated Rule 8.1. Although Respondent’s suit was also a suit for the payment of legal fees and contained assertions of defamatory statements in venues other than disciplinary proceedings, Rule 3.1 clearly provides that an “issue” in a law suit must have a basis in law which is not frivolous. As a practicing attorney Respondent is charged with knowing the law, including the provision of Rule XIX § 12(A) that completely bars his filing a petition that alleges defamation by the complainant. That provision has been in place since 1990, more than a decade before Respondent filed his law suit.
 

 A reasonable lawyer in Respondent’s position would have easily concluded that his defamation lawsuit against his former client predicated on her complaints to | i8the ODC was meritless. Because there existed a clear legal bar. to the filing of a suit for defamation predicated on Ms. Ras-panti’s complaints to the ODC, we agree with the committee and the board that Respondent’s suit was frivolous and violated Rule 3.1. We are not the first state to find that the filing of a civil suit in violation of absolute immunity afforded complainants is a frivolous action that violates Rule 3.1.
 
 See In re Spikes,
 
 881 A.2d 1118, 1125 (D.C.2005); for violations of similar rules,
 
 see also, Conduct of Adams,
 
 293 Or. 727, 739-740, 652 P.2d 787 (1982);
 
 Columbus Bar Association v. Elsass,
 
 86 Ohio St.3d 195, 713 N.E.2d 421 (1999).
 

 In arguing that his suit against Ms. Ras-panti was not frivolous Respondent relies on
 
 Goldstein v. Serio,
 
 496 So.2d 412 (La. App. 4 Cir.1986), and
 
 Sommer v. State, Department of Transportation and Development,
 
 97-1929 (La.App. 4 Cir. 3/29/00), 758 So.2d 923.
 
 [11]
 

 In
 
 Goldstein,
 
 attorneys filed a lawsuit against former clients after the Louisiana State Bar Association’s Committee on Professional Responsibility dismissed the former clients’ complaints against the attorneys. The lawsuit sought damages for defamation, malicious prosecution, and abuse of process. The trial court held that the complaints to the Louisiana State Bar Association were absolutely privileged and maintained the exception of no cause of
 
 *538
 
 action. The court of appeal affirmed the trial court’s ruling with respect to the defamation claim. However, it reversed the ruling with respect to the malicious prosecution and abuse of process claims, finding that absolute privilege is not an affirmative defense when “the crux of the action is not the | ^statements made but the fact that a proceeding was maliciously and/or illegally pursued.”
 
 Goldstein,
 
 496 So.2d at 415.
 

 In the instant case, the board noted that Respondent’s initial petition alleged defamation, but he subsequently added claims of abuse of process and malicious prosecution. The board noted that the ODC did not make an issue of these claims in its formal charges. Nevertheless, the board rejected the
 
 Goldstein
 
 argument, concluding that the “no lawsuit” prohibition contained in Section 12(A) is clearly broad enough to encompass suits for malicious prosecution as well as abuse of process. The board opined that in promulgating Section 12(A), this court could have concluded that providing a complainant or witness with an affirmative defense was insufficient protection since affirmative defenses must be pleaded, LSA-C.C.P. art. 1005, and can be waived. We agree with the board’s rejection of Respondent’s
 
 Goldstein
 
 argument.
 

 Respondent also cites this court’s discussion of
 
 Goldstein
 
 in
 
 Marrogi v. Howard,
 
 01-1106 (La.1/15/02), 805 So.2d 1118, a case involving the privilege of absolute immunity for witnesses in civil litigation. In explaining
 
 Goldstein,
 
 this court stated, “[T]he privilege applies to preserve candor in the attorney disciplinary system, yet complaints to the bar undertaken in malice or in abuse of process are not worthy of such protection.”
 
 Marrogi,
 
 01-1106 at 13, 805 So.2d at 1127. However, as the disciplinary board now points out,
 
 Goldstein
 
 was decided on the basis of LSBA Articles of Incorporation, art. XV, § 13, which did not contain the “no lawsuit” clause now embodied in Section 12(A). The
 
 Marrogi
 
 opinion did not address Rule XIX, § 12(A), and it is clearly distinguishable from a case in the lawyer disciplinary system.
 

 |2nBecause we have determined that Respondent’s action in filing a civil lawsuit against a complainant violated Rule 3.1, it follows that he engaged in professional misconduct pursuant to Rule 8.4(a) which states, “It is professional misconduct for a lawyer to ... violate the Rules of Professional Conduct.”
 

 Finally, even if we were inclined to disagree with the hearing committee and the board concerning their conclusions that Respondent violated Rule 3.1 and, thus, engaged in professional misconduct pursuant to Rule 8.4(a), we conclude that the gravamen of the ODC’s formal charges against Respondent lies in misconduct pursuant to Rule 8.4(d),
 
 ie.,
 
 conduct that is prejudicial to the administration of justice. Filing a lawsuit based on a cause of action which is specifically prohibited by Rule XIX, § 12(A) has a chilling effect on complaints against attorneys and is prejudicial to the administration of justice within the arena of attorney discipline.
 

 In the instant case, where suit against a complainant was actually filed (as contrasted with a threatened lawsuit, as in
 
 Harris,
 
 supra) and continued (with various amendments) in violation of Rule XIX, § 12(A), we conclude that Respondent engaged in professional misconduct pursuant to Rule 8.4(d).
 
 Accord, In re Smith,
 
 989 P.2d 165, 172 (Colo.10/4/99);
 
 Spikes, supra.
 

 Louisiana Supreme Court Rule XIX, § 10. Sanctions:
 

 Having found evidence of professional misconduct, we now consider the sole remaining issue,
 
 ie.,
 
 the appropriate sanction for Respondent’s actions. In de
 
 *539
 
 termining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Association v. Reis,
 
 513 So.2d 1178 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any j21 aggravating and mitigating circumstances.
 
 Louisiana State Bar Association v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 Rule XIX, § 10(A) provides that misconduct shall be ground for this court to impose, among others, one or more of the following sanctions: disbarment, suspension, probation, reprimand.
 

 Rule XIX, § 10(C) provides that this court shall consider the following factors in imposing sanctions: 1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; 2) whether the lawyer acted intentionally, knowingly, or negligently; 3) the amount of the actual or potential injury caused by the lawyer’s misconduct; and 4) the existence of any aggravating or mitigating factors.
 

 In the instant case, the hearing committee recommended Respondent be reprimanded. Neither the ODC nor the Respondent specifically objected to this recommendation. As previously stated, the hearing committee determined that Respondent violated the spirit of Rule XIX, § 12(A) and also violated Rules 3.1, 8.4(a), and 8.4(d) of the Rules of Professional Conduct. The committee also determined that Ms. Raspanti suffered no direct harm; Ms. Raspanti filed at least two non-meritorious complaints against Respondent; and Respondent only represented her at the insistence of their parents. The committee found Respondent’s frustration with his sister was understandable, but nevertheless resulted in a rule violation that called for a sanction. The only aggravating factor found by the committee was Respondent’s refusal to acknowledge the wrongful nature of his conduct. The committee felt constrained to recognize a violation and recommend a sanction. Accordingly, the committee recommended that Respondent be publicly reprimanded.
 

 ImOn the other hand, the board determined Respondent knowingly violated duties owed to the legal system and to Ms. Raspanti; caused harm to Ms. Raspanti in forcing her to defend the defamation claim; and took retaliatory action that threatens to undermine the disciplinary system.
 

 In aggravation, the board found the following factors: refusal to acknowledge the wrongful nature of the conduct, lack of remorse, substantial experience in the practice of law, and indifference to making restitution or minimizing the harmful effects of the misconduct. The only mitigate ing factor was the absence of a prior disciplinary record.
 

 Relying on the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the board determined that the baseline sanction is suspension. The board recommended that Respondent be suspended for one year with all but three months deferred. The board further recommended that Respondent be placed on unsupervised probation for nine months following the active period of the suspension, subject to the condition that any misconduct during this period may be ground for making the deferred suspension executory or imposing additional discipline, as appropriate. Finally, the board recommended that Respondent be assessed with all costs and expenses of these proceedings.
 

 Our
 
 de novo
 
 review of the record in this case convinces us that the recommendation
 
 *540
 
 of the hearing committee for a public reprimand is more in line with the nature of Respondent’s violation. Our choice of the most lenient discipline available to us pursuant to Rule XIX, § 10 should not be interpreted as deprecating the importance of the rule that was violated in the instant case. Thus, we issue the following caveat.
 

 | ¡^Considering that the facts of this case were undisputed by Respondent and the ODC, we were left with a single, novel issue: the interpretation and application of Rule XIX, § 12(A). We have resolved that issue by finding the provision accords complainants absolute immunity from civil suits. As the instant case illustrates, not all complainants will be equally justified in making complaints to the lawyer disciplinary system; yet all complainants will have equal, absolute immunity. Granting a complainant absolute immunity when filing a complaint against a lawyer is a part of the disciplinary system adopted from the ABA Model Rules for Lawyer Disciplinary Enforcement in 1990, which are designed to regulate attorneys and sanction those who violate the ethical standards of the legal profession.
 

 Respondent has violated a clear, unambiguous rule that has been in place for almost two decades; if he did not know that filing suit against his former client alleging defamation (and later abuse of process and malicious prosecution) was completely prohibited, he should have known. Louisiana is not the only state to find that violation of the absolute immunity rule is also a violation of the Rules of Professional Conduct prohibiting frivolous lawsuits and interference with the administration of justice.
 
 See Spikes, supra.
 

 However, there are several factors in mitigation of Respondent’s knowing violation. First, we are issuing a sanction for a matter for which no one has been sanctioned previously. There are statements in the jurisprudence that might indicate the possibility of our arriving at an interpretation of Rule XIX, § 12(A) contrary to the interpretation we issue today. For example, the board in
 
 Harris, supra,
 
 as recently as 2003, indicated Section 12(A) did not provide a sanction; the board in the instant case found the rule clear and unambiguous.
 

 | ^Second, we do not consider Respondent’s lack of remorse an aggravating factor; instead, we find he had a principled belief he was not engaging in inappropriate behavior. While we disagree with his belief, we are at the same time convinced he was sincere in his belief, thus, making any finding of a lack of remorse inappropriate.
 

 Third, we note he has no prior disciplinary record during his lengthy career.
 

 Next, although Respondent cannot avoid discipline by relying on the fact that he was represented by counsel in his suit against his sister, that fact may be considered in mitigation.
 

 Finally, as did the hearing committee, this court recognizes that Respondent represented his sister only because his parents urged him to do so. Unlike the completely unprovoked threat of a civil suit in
 
 Harris,
 
 Respondent’s suit apparently was filed in an attempt to put an end to what the ODC determined to be baseless complaints on the part of his former client.
 

 Regardless of the mitigating factors listed above, we find that Respondent in failing to refrain from filing a civil suit violated a duty he owed to a former client, the public, the legal system and the profession. He acted with, at least, constructive knowledge of a prohibition. Although he may have caused injury to his former client because she was called upon to defend herself, such injury was not substantial
 
 *541
 
 because there was ongoing litigation regarding a fee dispute.
 

 Accordingly, we conclude that a public reprimand issue against Respondent, and that he be cast for costs of these proceedings.
 

 PUBLIC REPRIMAND IMPOSED; RESPONDENT CAST FOR COSTS OF THESE PROCEEDINGS.
 

 [1]
 

 . Respondent filed an objection in this court to the disciplinary board’s recommendation, but the filing was not within the time limits of Louisiana Supreme Court Rule XIX, § 11(G)(1). Ordinarily, the filing of objections in a bar disciplinary case determines how the case is treated. In a “no objection” matter under Rule XIX, § 11(G)(1)(a), this court may enter an order based on the recommended disciplines with written reasons, which may be summary in nature. By contrast, the filing of an objection mandates that the case be scheduled for oral argument under Rule XIX, § 11(G)(1)(b). Despite the fact that this is technically a “no objection” case, we chose to schedule oral argument and docket the case for a full opinion because the issue is
 
 res nova
 
 with this court.
 

 [2]
 

 . In December 2003, the trial court granted Ms. Raspanti's motion to dismiss Respondent's defamation claims "based on complaints to the disciplinary board, including the appeal to the Supreme Court.” Respondent filed a notice of intent to seek supervisory writs from the trial court’s ruling, but it appears that the application was never filed in the court of appeal.
 

 [3]
 

 . In its recommendation to this court, the disciplinary board noted that the ODC’s pre-hearing memorandum also alleged Respondent’s conduct violated Rule 3.1 entitled "Meritorious Claims and Contentions.” Respondent thereafter filed a motion to strike
 
 *530
 
 allegations relative to Rule 3.1 of the Rules of Professional Conduct. Citing
 
 Louisiana State Bar Association
 
 v.
 
 Keys,
 
 567 So.2d 588, 591 (La.1990), the hearing committee concluded fair and adequate notice of the nature of the misconduct had been given to Respondent, and therefore, the Rule 3.1 claim could be pursued by ODC.
 

 [4]
 

 . Suggestions For reform were made concerning: 1) structure of the disciplinary system, such as separation of the duties of the executive counsel from disciplinary duties; 2) intake and docket procedures; 3) investigation; 4) disposition after investigation; and 5) sanctions. The report noted an absence of provisions for complainant appeals and for witness immunity from criminal prosecutions and recommended the addition of same. Although the existing bar rule, Art. XV, § 13, provided an absolute privilege for complaints to the disciplinary committee, but did not provide immunity from the instigation of civil suits, the ABA team did not note that deficiency-
 

 [5]
 

 . Prior to the reenactment, Louisiana Supreme Court Rule XIX provided: "All matters touching upon the discipline and disbarment of members of the bar shall be governed by Article XV of the Articles of Incorporation of the Louisiana State Bar Association, as amended, and as approved by this court.” La. S.Ct. R.
 
 XXX
 
 (West 1988) (repealed 1990).
 

 [6]
 

 . The rules are divided into eight categories:
 

 1. Client-Lawyer Relationship:
 

 2. Counselor;
 

 3. Advocate;
 

 4. Transactions with Persons Other Than Clients;
 

 5. Law Firms and Associations;
 

 6. Public Service;
 

 7. Information about Legal Services; and
 

 8. Maintaining Integrity of the Profession.
 

 [7]
 

 .Immunity from criminal prosecution which had been recommended by the ABA team was enacted in Paragraph B of Section 12, as follows: “Upon application by disciplinary counsel and notice to the appropriate prosecuting authority, the court may grant immunity from criminal prosecution to a witness in a discipline or disability proceeding.”
 

 [8]
 

 . We note that although the wisdom of the rule has been questioned, the rule has been adopted in other states. For example, the Supreme Court of New Jersey has recognized that the strong public policy in favor of maintaining strict adherence to the rules of discipline required the removal of any impediment to the effective functioning of the disciplinary system. Allowing complainants to be vulnerable to lawsuits brought by lawyers against whom they complained would be an undesirable impediment. Allowing such suits might eliminate some maliciously motivated complaints, but legitimate complaints would simi-
 
 *535
 
 ially be chilled. The public policy considerations making unacceptable any such chilling effect is deemed important enough to overcome well-founded arguments against such immunity.
 
 In re Hearing on Immunity for Ethics Complainants,
 
 96 N.J. 669, 671-672, 477 A.2d 339, 340 (1984).
 

 [9]
 

 . It is conceivable that a non-lawyer would be defamed in a communication by a complainant or witness in an attorney-disciplinary proceeding. In which case, Section 12(A) nevertheless prohibits filing a suit against complainants and witnesses, and attorneys would be subject to discipline for filing suit on behalf of non-lawyers. Such allegedly defamed persons would be in violation of this rule if they filed in proper person, but there would be no sanctions against non-lawyers.
 

 [10]
 

 .
 
 Compare
 
 with Rule 2, which is entitled "Counselor,” and includes Rule 2.1, as follows: “In representing a client, a lawyer shall exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social and political factors, that may be relevant to the client’s situation.” The roles of counselor and advocate illustrate the dichotomy of a lawyer’s practice.
 

 [11]
 

 . In
 
 Sommer,
 
 the court of appeal held defamatory statements by a State employee to the United States Customs Service about a Customs Service employee were not protected by absolute judicial privilege because the privilege does not protect against intentional destruction of the employee’s career. As previously stated, the board rejected Respondent’s defense based on
 
 Sommer
 
 because that case did not involve disciplinary proceedings.